Note: This Settlement between the Plaintiffs in Federal Action 08-cv-00147 and Defendant Darren Geare was signed in counterparts. The text of the document was sent to Darren Geare in an email. It was printed out in Los Angeles and signed by the Defendants and notarized in California and then sent by Federal Express back to New York. That executed copy of the settlement agreement contained slight misprints due to problems with Mr. Geare's printer and had slightly different formatting due to the pasting of highly formatted text from Wordperfect into an email window. Furthermore, it was also agreed by the Plaintiffs and the Defendants to add one extra paragraph to the Agreement. In this final composition of the document, the copy executed by Mr. Geare is being placed into the document as Exhibit F. The exchange of emails in which Mr. Geare agreed to the extra paragraph of text is being placed into the document as Exhibit G.

April 5, 2008

Final Settlement Offer Prior to Moving for Default.

The parties (the "Parties") to this settlement agreement are Plaintiffs Robert Ptak, Renee Frisch and Michael Kane ("Plaintiffs") and Defendant Darren Geare (the "Settling Defendant" or "Geare") who is a defendant in the Current Action.

If executed via Notarized signatures by all Parties provided with signature lines below ("the Signing Parties"), this agreement will constitute a settlement for Federal Civil Index number 08-cv-00147 (the "Current Action") among the Signing Parties and a mutual release of past claims according to the following limitations and terms, including terms listed below that will carry forward and survive the limited release described in this paragraph:

1.      Introduction

        Plaintiffs Ptak and Frisch served as executive producers and managers of Defendant Geare and his band Hong Kong Six ("the Band") from April 2006 to July 2007 ("the Band Performance Period"). During the Band Performance Period, Plaintiffs Ptak and Frisch also invested substantial funds in the Band. A conflict emerged between Plaintiffs and Defendants, commencing gradually beginning in May and June of 2007, and eventually leading to an open rupture of business affairs in July 2007 ("the Conflict").

2.      The Settling Defendant affirms and acknowledges that:

        a.      Neither Plaintiffs nor any of their associates committed any wrongdoing whatsoever or played any role in commencing the Conflict.

        b.      Plaintiffs Ptak and Frisch ("Ptak and Frisch") played an exemplary role as both managers and executive producers throughout the Band Performance Period with Geare and in that regard;

i.      Ptak and Frisch played an instrumental and irreplaceable role in the re-recording of old song material primarily written by Geare which was published in a black sleeve and was referred to by both Plaintiffs and Defendants as the black album ("the Black Album").

ii.     Ptak and Frisch played an equally instrumental and irreplaceable role in the arranging and recording of a later album of both brand new and re-recorded material in 2007 described by both Plaintiffs and Defendants as the Hong Kong Six album ("the Hong Kong Six Album").

iii.    Ptak and Frisch were financial investors in Geare, Geare's music and the Band.  As such, no scenario was ever conceived by the parties whereby Geare would be permitted to negotiate with any new parties free and clear of a substantial commission to Ptak and Frisch for their management and executive production services merely by paying back funds advanced by Ptak and Geare.

iv.     Even if the check ("the Purported Reimbursement Check") sent by Geare to Ptak on August 22nd, 2007 in the amount of $37,093.21 had equaled the amount of money expended by Ptak and Frisch over the course of their working relationship with Geare, it could not possibly have reimbursed Ptak and Frisch for their one and a half years of unremunerated work for Geare.

(1)     The Purported Reimbursement Check also could not possibly have provided any compensation whatsoever to Plaintiff Michael Kane ("Plaintiff Kane") who crafted a series of professionally designed logos for Geare; and,

(2)     Plaintiff Kane's work received many approvals from Geare and his band; and,

(3)     that Plaintiff Kane was clearly induced by these approvals to continue work believing reasonably that his compensation would be included in any later formal memorializations of the agreement between Plaintiffs and Defendants; and,

(4)     that the opinion of the Settling Defendant regarding the quality of Plaintiff Kane's logo work was aptly expressed in an email dated June 7, 2006, in which he wrote:

Hey what's up, man -- the artwork looks so fuckin sick! We're really excited about it ... I just talked to rob and was telling him about how the song titles aren't all right, so he told me to email you and give them to you :
ALL THE RAGE

SWIM WITH THE SHARKS
STOP LOOKING AT ME
POP CULTURE'S GONNA EAT YOU

Rob wanted me to tell you to take the number's out, so it's just the song titles ... also, I'm really torn on whether the "O" in KONG should have the spacer or not -- if you could send me a version without so I could check it out that would be great! Thanks for all your hard work, Mike!

Darren

(5)     The Settling Defendant affirms that his opinion of Plaintiff Kane's artwork never diminished from the time that the sent the statement quoted immediately above and that he maintains this opinion at the present.

c.     Half the funds of the Purported Reimbursement Check came from a wealthy software engineer in California named Craig Franklin ("Franklin").  And, in that regard:

i.     Plaintiff Ptak made all possible efforts as Geare's manager to protect Geare's interests as a potential star musician against Franklin's attempts to utilize Geare's 'name and likeness'.

ii.     Geare led Ptak to believe, up to July 2007 that Ptak was leading all negotiations between Geare and Franklin.

iii.     After July 2007, Geare performed studio work for Franklin ("the Franklin Studio Work") to which Ptak deserved a commission.  However, after July 2007, Geare ceased to respond regularly to Plaintiff Ptak's attempts to communicate with him and Plaintiff Ptak received no further commissions on the Franklin Studio Work.

d.     Geare was induced to act in the manner described in Section 2ciii by New York based attorney Howard Sadowsky ("Sadowsky"); and, in that regard the Settling Defendant affirms and acknowledges:

i.     Geare was introduced to Sadowsky exclusively by Ptak;

ii.     Although Geare was not certain as to whether Sadowsky was representing Ptak, he never has possessed any knowledge to the contrary.  In other words, with the exception of the following sentences, he never had any knowledge to the effect that Sadowsky was NOT representing Ptak.  The idea that Sadowsky did not represent Ptak came entirely from statements made solely by Sadowsky ("Sadowsky's Exclusive Representation

Statement") which occurred subsequent to the emergence of the Conflict. Prior to Sadowsky's Exclusive Representation Statement which Geare believed due to his confidence in Sadowsky's legal skills and integrity, Geare believed that there was a possibility that Sadowsky was representing Ptak, and, this belief, for a time, constrained Geare from contacting Sadowsky even to inquire as to whether Sadowsky represented Ptak;

iii.    Until July 2007, Geare communicated with Sadowsky exclusively through Ptak;

iv.    After the emergence of the Conflict, Sadowsky instructed and dictated the waiver language that was place on and accompanied the Purported Reimbursement Check (language which stated that negotiation of the Purported Reimbursement Check would release all claims against Geare); and,

v.    Sadowsky never warned or informed Geare that Sadowsky's actions detailed here and above might constitute legal malpractice or a violation of attorney ethics.  Furthermore, Sadowsky also never warned Geare that the actions Sadowsky instructed Geare to take might constitute a breach of contract with Ptak.

vi.    In his relations with Sadowsky, Geare relied on Sadowsky's advice because:

(1)    He had no other source of legal counsel;

(2)    he was unsophisticated in business dealings and had no experience by which he might comprehend that an attorney might give him advice that would result in breaches of an existing contractual relationship.

(3)    The engineering work paid for by Plaintiff Ptak and carried out by Kyle Homme was highly skillful and never needed to be re-recorded.

3.    The Song Splits:

The Settling Defendant:

a.    conveys and commits to support and defend Plaintiff's perpetual right to:

i.    plaintiffs' percentage share ("Plaintiffs' Percentage Share") described more fully on attached Exhibit C to the entire bundle of rights granted by the United States Code Title 17 to copyrighted works, including but not

limited to,

    (1)    any and all gross earnings to be derived from the sale and/ or licensing of the masters or publishing (Defined in Exhibit B) of the songs or sampled portions of the songs (the "Songs with Plaintiff Interest") also listed on attached Exhibit C.and/or,

    (2)    any derivative works and/or variations to be created from the Songs with Plaintiff Interest;

    ii.    where Plaintiff's Percentage Share is described as a numerical range (eg: 15-25%), the exact determination of Plaintiffs Percentage Share will be determined according to the arbitration procedures detailed in Exhibit E. The determination of Plaintiff's Percentage Share of the Songs with Plaintiff's Interest will be the only issue to be subject to arbitration with all other disputes arising from this agreement to be resolved subject to the provisions of Section 4.

b.    insures and warrants that no marketing, licensing or sales of the Songs with Plaintiffs Interest has occurred or shall occur unless Plaintiffs Robert Ptak and Renee Frisch receive explicit and express credit as Executive Producers;

c.    warrants to Plaintiffs ("Geare's Anti-Dilution Warranty") that no dilution of his interest in the Songs with Plaintiffs interest has occurred except among the members of the Band; and indemnifies Plaintiffs including but not limited to reasonable attorneys fees for any damages to be incurred deriving from any inaccuracy in Geare's Anti-Dilution Warranty;

d.    commits to market the Songs with Plaintiffs Interest to the utmost extent of his ability and resources; in this regard, it shall be the sole right of Plaintiffs to determine whether they wish to be the lead marketers, co-marketers or to make no marketing efforts of their own whatsoever in regard to the Songs with Plaintiffs Interest; furthermore, Ptak and Frisch shall have the right to defend and prosecute against any infringement of the Songs with Plaintiffs Interest (provided that theuse of the songs which Ptak and Frisch allege to be an infringement was not authorized by the Settling Defendant). The Settling Defendant shall cooperate with Ptak and Frisch in any manner reasonably necessary to accomplish the prosecution of any aforementioned infringement, and this Agreement shall constitute a limited power of attorney for Ptak and Frisch to prosecute against any aforementioned infringement in the name of the Settling Defendant as well as their own. In any actions launched under this paragraph, the Settling Defendant shall share in the legal expenses in the sense that these expenses shall be deducted from the gross revenue from the Songs with Plaintiffs Interest in the calculation of Net Profit to be determined according to the paragraph immediately below.

e.    grants Plaintiffs Ptak and Frisch the right to audit the Settling Defendant or any of

the Settling Defendants grantees or licensees with an auditing agent of Plaintiffs choice in any manner that Plaintiff chooses up to the limits of commercially reasonable criteria;

    f.    ratifies his express revocation of the waiver language that prevented Plaintiff Ptak from claiming the funds from the Purported Reimbursement Check.

    g.    commits to obey the terms of the prior written agreement with mixer Kyle Homme, attached to this Agreement as Exhibit D.

4.    In any dispute arising from an alleged breach of this Agreement, the party alleging breach will be permitted to utilize all remedies available at law and/or equity including injunctive remedies.  In any such conflict, the non-prevailing party agrees to pay the costs legal costs of the prevailing party, including but not limited to reasonably attorneys fees.

5.    INTERPRETATION AND NOTICE.

    a.    Interpretation

        i.    A provision of this document that requires a party to perform an action will be construed as requiring the party to perform the action or to cause the action to be performed.

        ii.    A provision of this document that prohibits a party from performing an action will be construed as prohibiting the party from performing the action or permitting others to perform the action.

        iii.    This agreement may be executed in counterparts with a copy, including a digital copy, to be deemed as good as an original.

        iv.    Captions and headings used in this document are for reference only. They should be ignored by persons interpreting this document.

        v.    This Agreement will be construed in accordance with New York law without regard to New York law as to conflicts of law. New York County will be considered the only proper venue for the resolution of any disputes related to this Agreement.

        vi.    This Agreement has been thoroughly negotiated over the course of months with both parties making extensive contributions to the text.  As such, it is not a contract of adhesion and shall be deemed to have been drafted by both sides.

To signify their assent to this agreement, each party has set forth his or her signature below.

Darren Geare, Settling Defendant _____

State of California
County of _____

On _____ before me _____ personally
appeared _____
personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

Witness my hand and official seal.

_____
Signature of Notary Public

Robert Ptak, Plaintiff _____

STATE OF NEW YORK

COUNTY OF _____

On the _____ day of _____ in the year _____ before me, the
undersigned, personally appeared _____, personally known to me
or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the
instrument.

_____
Notary Public

Printed Name: _____
My Commission Expires:

_____

Renee Frisch, Plaintiff _____

STATE OF NEW YORK

COUNTY OF _____

On the _____ day of _____ in the year _____ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.


_____

Notary Public

Printed Name: _____

My Commission Expires:


_____

Michael Kane, Plaintiff _____

STATE OF NEW YORK
COUNTY OF _____
On the _____ day of _____ in the year _____ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public
Printed Name: _____

My Commission Expires:


_____

Exhibit A:

Section 1

(Total songs at issue, all songs received development contribution by Plaintiffs):

1. Land of the Brain Damaged
2. Lean on you
3. Crazy
4. Lips
5. Pop Culture's Gonna Eat You
6. Destroy Me
7. Run Away
8. Rain On Your Parade
9. Every Trick In The Book
10. Don't Say It
11. We Are The World
12. Lost Again
13. Stop Looking at Me
14. Swim with the Sharks
15. Can't Stop the Contest
16. Read My Mind
17. Guilty
18. No Way Out
19. All the Rage

Exhibit B

Definition of Masters: Masters are defined as the existing digital recordings created by either engineer Alessandro Elena and/ or Kyle Homme and presently existing on both a hard drive in the possession of Plaintiff Ptak and on a disc that was created in the Spring of 2007. This includes any and all other copies of said recordings existing on other hard drives or any copies of said recordings made without the knowledge and or consent of the Plaintiff.

Definition of Publishing: The commercial exploitation of songs through the issuance of mechanical licenses, synchronization licenses, performing rights licenses, print licenses as well as any other licenses authorizing various uses of the lyrics, score, samples or any visual representations or simulations of the musicians playing music.

Exhibit C

Plaintiff's Percentage Share of the Songs with Plaintiff's Interest is as follows:

1.   Group 1: From this group, Plaintiff will receive 15% - 25% from (according to the terms of Section 3.a and the definitions in Exhibit B) of the Master recordings of these songs:

   a.   Land Of The Brain Damaged
   b.   Swim With The Sharks
   c.   Destroy Me
   d.   Lips
   e.   Crazy
   f.   Stop Looking At Me
   g.   All The Rage
   h.   Lean On You
   i.   No Way Out
   j.   Pop Culture's Gonna Eat You

2.   Group 2: Cumulative of any rights in the other groups in this Exhibit C, from this group, Plaintiff will receive 10% - 20% from the  (according to the terms of Section 3.a and the definitions in Exhibit B) the Publishing of these songs:

   a.   Land Of The Brain Damaged
   b.   Lean On You
   c.   Crazy
   d.   Lips
   e.   Pop Culture's Gonna Eat You
   f.   Run Away
   g.   Rain On Your Parade
   h.   Every Trick in the Book
   i.   Don't Say It
   j.   We Are The World
   k.   Lost Again

3.   Group 3: Cumulative of any rights in the other groups in this Exhibit C, from this group, Plaintiff will receive 5% - 15% from the  (according to the terms of Section 3.a and the definitions in Exhibit B) the Publishing of these songs:

   a.   Stop Looking At Me
   b.   Swim With The Sharks
   c.   Can't Stop The Contest
   d.   Read My Mind
   e.   Guilty
   f.   No Way Out
   g.   All The Rage
   h.   Destroy Me

Exhibit D:

Email regarding Kyle Homme's split:


Hey Charlie,
I apologize for the delay with the paperwork.  I have been in the process of drafting the agreement with my attorney.  We have several docs to generate so it is taking some time.

The agreement we are working up reflects our discussions and will include a 10k bonus if we sell the masters to a major label for over 100k. Of course, that is for selling the masters outright and does not include money the label offers up to market the record or personal advances to the band etc.
I think the quality of the work gives us a really good chance to sell the masters outright for that amount of money, however in the interest of covering as many potential  outcomes as possible the band feels that they should offer sales achievement bonuses. In the event we cannot sell the masters for that amount of money the band would instead like to offer a 10k bonus at the 250k unit sales level. This bonus will take the place of the bonus we have set for the sale of the masters for 100k. Additionally we would like to offer a 10k bonus at 500k and another 10k at 1,000,000. This is a total of 30k in potential bonuses for the excellent work Kyle did.


We discussed adding additional bonuses at lower sales levels but as the band has 5 members I feel like they will need all the money they can get up until they start selling above the 250k mark. Even then I suspect they will still be in a some what limited financial situation.
None of he band are wealthy and have sacrificed more consistent and lucrative careers in order to make the band happen so I want to stay away from cutting too deeply into the initial earnings the band will see.


We are all extremely impressed with Kyle's work and professionalism in the studio. I hope we can work on future recordings together.

Thanks,

Rob

Exhibit E
Arbitration

Arbitration:

1.    When Arbitration may be Invoked:

     a.    In this Agreement, arbitration may only be invoked to determine the song splits laid out in Exhibit C within the ranges specified in Exhibit C.

     b.    The years commencing from the execution of this Agreement and succeeding after each anniversary of this Agreement will be termed  ("Agreement Years").  Either the Settling Defendant as one party or Ptak and Frisch acting jointly as the only other party may invoke arbitration ("an Invocation of Arbitration") once per Agreement Year upon 30 days written notice to the other Party.

2.    Determining the Arbitrator:

     a.    The Party  invoking arbitration ("Petitioner") may initiate arbitration by giving notice of arbitration ("Petitioner's Notice") to the other Party ("Respondent").  The Petitioner's Notice will designate a ("Qualified Person" defined in Section 3 of this Exhibit D as the petitioner's arbitration nominator ("Petitioner Arbitration Nominator") and will set forth the Petitioner Arbitration Nominator's name and address.

     b.    Within fifteen days after the Petitioner's Notice is given ("the Fifteen Day Nomination Period"), Respondent  shall designate a second Qualified Person as the respondent's arbitration nominator ("Respondent Arbitration Nominator") and give notice to the Petitioner of the Respondent Arbitration Nominator's name and address.

     c.    If the Respondent fails to give notice designating the Respondent Arbitration Nominator by the expiration of the Fifteen Day Nomination Period, the Petitioner's Arbitration Nominator shall select a second Qualified Person to be the Respondent Arbitration Nominator.

     d.    Within fifteen days after their designation, the arbitration nominators shall appoint a third Qualified Person as the Arbitrator.  If the arbitration nominators do not agree on an Arbitrator within the Fifteen Day Nomination Period, they shall give notice of their failure to agree to both Petitioner and Respondent ("Notice of Nominators' Failure").

     e.    The following will apply if the arbitration nominators give Notice of Nominators' Failure to to Petitioner and Respondent:  Petitioner and Respondent shall confer and attempt to agree on an Arbitrator.  If Petitioner and Respondent do not agree on the appointment of an Arbitrator within ten days after they receive the  Notice of Nominators' Failure, either Petitioner or Respondent may apply to the American Arbitration Association for the appointment of an Arbitrator.

3.    Qualified Persons:

a.   Only individual persons meeting the following qualifications will be "Qualified Persons."

i.   A music  industry executive will be a Qualified Person if the executive has at least five years executive experience in the music industry.

ii.   A band manager will be a Qualified Person if the manager  has at least five years experience as a band manager in the music industry and has managed at least one band that has earned at least one million dollars of gross revenue .

iii.   A business attorney will be a Qualified Person if the attorney, as a licensed attorney, has

(1)   at minimum five years of in house experience working for a corporation involved in the sale of music with at least $5 million in gross revenue or,

(2)   at minimum eight years of experience practicing primarily in the field of music law.

iv.   After the arbitrator is appointed, he or she shall consider the matter promptly.  The arbitration will be conducted in New York County, New York.

b.   Substantive Considerations for the Arbitrator:
In determining Plaintiff's Percentage Share to be determined within the restricting ranges laid out in Exhibit C, the following criteria will be given consideration:

i.   First, the arbitrator will determine what Plaintiffs Ptak and Frisch would deserve, by music industry standards, solely for their role in managing the Settling Defendant and the Band;

ii.   if, at the time of the arbitrator's determination, Plaintiffs Ptak and Frisch have done no work as manager subsequent to the commencement of the Conflict, the determination of their fair share as manager will be made solely in regard to an industry standard commission for a manager who is no longer acting as manager.

iii.   if, at the time of the arbitrator's determination, Plaintiff Ptak and Frisch have accomplished additional managerial work subsequent to the commencement of the Conflict, the determination of their fair share as manager will be mae in regard to an industry standard commission for an active manager.

iv.   After determining what Plaintiffs Ptak and Frisch would deserve for their roles as managers, by industry standards, the arbitrator will determine what additional share Plaintiff's Ptak and Frisch would deserve for their other contributions such as their contributions as executive producers, financial investors and the provision of services by their friends and associates such as Plaintiff Kane's artwork.

v.   In regard to the arbitrator's assessment of Ptak and Frisch's financial contribution to the Band, the arbitrator shall not be permitted to take the funds from the Purported Reimbursement Check into account in any manner whatsoever.

vi.   The arbitrator shall add together all of the contributions of Plaintiffs Ptak and Frisch and if the total they would receive by industry standards is greater than the top level of the ranges specified in Exhibit C, they will receive the top level of the applicable range specified in Exhibit C.  Otherwise, they will receive the lesser percentage  which the arbitrator believes to be the industry standard, unless that percentage falls under the minimum value within the range, in which case, they will receive the minimum specified by the range specified in Exhibit C.

c.   Arbitration Procedures:

i.   Neither discovery nor motion practice will be permitted.  However, each side will have the right to present the opinon of an expert witness, and the arbitrator must take the views of each expert witness into account in regard to industry standards.

ii.   The Arbitrator must at all times be guided by the following over-arching principles, the arbitration must be conducted at a minimum cost to the the Parties who will share the expense equally.

Exhibit F – Executed Copy of the Agreement (one page down)

Gmail    Calendar    Documents    Photos    Reader    Web    more ▼          hongkongdarren@gmail.com | Settings | Older version | Help | Sign out

# Gmail

Search Mail | Search the Web   Show search options / Create a filter

Your browser's cache is full and may interfere with your Gmail experience. Fix this    Hide

**Compose Mail**

Beat Your Speeding Ticket - FightTheSpeedingTicket.com - Ex-Traffic Cop Shows You How To Beat Your Speeding Ticket Sponsored Link  ‹ | ›

« Back to Inbox    Archive | Report Spam | Delete | More Actions         ‹ Newer  47 of 2712  Older ›

**Inbox (1454)**

## Fwd: new version with slight changes   Inbox  x

Starred

**Robert Ptak** to me          show details Apr 7 (12 days ago) | Reply |

Chats

---------- Forwarded message ----------
From: dan halper <danhalper@gmail.com>
Date: Sat, Apr 5, 2008 at 6:58 PM
Subject: new version with slight changes
To: Robert Ptak <robert.ptak@gmail.com>

Sent Mail

Drafts

April 5, 2008
Final Settlement Offer Prior to Moving for Default.

All Mail

The parties (the "Parties") to this settlement agreement are Plaintiffs Robert Ptak, Renee Frisch and Michael Kane ("Plaintiffs") and Defendant Darren Geare (the "Settling Defendant" or "Geare") who is a defendant in the Current Action.

Spam (1983)

Trash

If executed via Notarized signatures by all Parties provided with signature lines below ("the Signing Parties"), this agreement will constitute a settlement for Federal Civil Index number 08-cv-00147 (the "Current Action") among the Signing Parties and a mutual release of past claims according to the following limitations and terms, including terms listed below that will carry forward and survive the limited release described in this paragraph:

**Contacts**

1.  The Parties

Plaintiffs Ptak and Frisch served as executive producers and managers of Defendant Geare and his band Hong Kong Six ("the Band") from April 2006 to July 2007 ("the Band Performance Period"). During the Band Performance Period, Plaintiffs Ptak and Frisch also invested substantial funds in the Band. A conflict emerged between Plaintiffs and Defendants, commencing gradually beginning in May and June of 2007, and eventually leading to an open rupture of business affairs in July 2007 ("the Conflict").

**Chat**

Search, add, or invite

Darren Geare
Set status here

Alex Elena
Alisa Santoro
hongkongcarlos...
Jeffrey Allen
Mary Modica
Nolan Spinney
Renee Frisch
Riley
Robert Ptak
thomasvutran
Options    Add Contact

2.  The Settling Defendant affirms and acknowledges that:

a.  Neither Plaintiffs nor any of their associates committed any wrongdoing whatsoever or played any role in commencing the Conflict.

b.  Plaintiffs Ptak and Frisch ("Ptak and Frisch") played an exemplary role as both managers and executive producers throughout the Band Performance Period with Geare and in that regard:

i.  Ptak and Frisch played an instrumental and irreplaceable role in the re-recording of old song material primarily written by Geare which was published in a black sleeve and was referred to by both Plaintiffs and Defendants as the black album ("the Black Album").

ii.  Ptak and Frisch played an equally instrumental and irreplaceable role in the arranging and recording of a later album of both brand new and re-recorded material in 2007 described by both Plaintiffs and Defendants as the Hong Kong Six album ("the Hong Kong Six Album").

iii.  Ptak and Frisch were financial investors in Geare, Geare's music and the Band. As such, no scenario was ever conceived by the parties whereby Geare would be permitted to negotiate with any new parties free and clear of a substantial commission to Ptak and Frisch for their management and executive production services merely by paying back funds advanced by Ptak and Geare.

iv.  Even if the check ("the Purported Reimbursement Check") sent by Geare to Ptak on August 22nd, 2007 in the amount of $37,093.21 had equaled the amount of money expended by Ptak and Frisch over the course of their working relationship with Geare, it could not possibly have reimbursed Ptak and Frisch for their one and a half years of unremunerated work for Geare.

(1)  The Purported Reimbursement Check also could not possibly have provided any compensation whatsoever to Plaintiff Michael Kane ("Plaintiff Kane") who crafted a series of professionally designed logos for Geare; and,

(2)  Plaintiff Kane's work received many approvals from Geare and his band; and,

(3)  that Plaintiff Kane was clearly induced by these approvals to continue work believing reasonably that his compensation would be included in any later formal memorializations of the agreement between Plaintiffs and Defendants; and,

(4)  that the opinion of the Settling Defendant regarding the quality of Plaintiff Kane's logo work was aptly expressed in an email dated June 7, 2006, in which he wrote:

Hey what's up, man -- the artwork looks so fuckin sick! We're really excited about it ... I just talked to rob and was telling him about how the song titles aren't all right, so he told me to email you and give them to you :
ALL THE RAGE
SWIM WITH THE SHARKS
STOP LOOKING AT ME
POP CULTURE'S GONNA EAT YOU

Rob wanted me to tell you to take the number's out, so it's just the song titles ... also, I'm really torn on whether the "O" in KONG should have the spacer or not -- if you could send me a

New window
Print all
Collapse all
Forward all

Sponsored Links

**Clear Your Record**
Remove arrests, misdemeanors and felonies from your record!
www.ClearMyRecord.com

**Speeding Ticket Law**
Ex-Traffic Cop Shows How To Fight And Beat Your Speeding Ticket.
Fight-The-Speeding-Ticket.com

**Breach of Contract Lawyer**
Aggressive Trial Law Firm. Proven Results. Serious Contract Cases
HarrisonGavinLongLawFirm.Com

**court law**
Find 70,000 jobs that pay over $100,000. Search now.
www.TheLadders.com

**Digital Evidence Recovery**
Certified Computer Forensics Expert w/ Depo & Court Exp., SF Bay Area
ComputerForensicsOne.com

Related Pages

Pa. medical malpractice case filings continue post-reform pace
Phoenix Business Journal (subscription) - Apr 15, 2008
The number of medical malpractice case filings last year continued ...

More related pages »

About these links

really torn on whether the "O" in KONG should have the spacer of not — if you could send me a
version without so I could check it out that would be great! Thanks for all your hard work, Mike!

Darren
    (5)  The Settling Defendant affirms that his opinion of Plaintiff Kane's artwork never
diminished from the time that the sent the statement quoted immediately above and that he
maintains this opinion at the present.

  c.  Half the funds of the Purported Reimbursement Check came from a wealthy software
engineer in California named Craig Franklin ("Franklin"). And, in that regard:

    i.  Plaintiff Ptak made all possible efforts as Geare's manager to protect Geare's interests as
a potential star musician against Franklin's attempts to utilize Geare's 'name and likeness'.

    ii.  Geare led Ptak to believe, up to July 2007 that Ptak was leading all negotiations between
Geare and Franklin..

    iii.  After July 2007, Geare performed studio work for Franklin ("the Franklin Studio Work") to
which Ptak deserved a commission. However, after July 2007, Geare ceased to respond regularly
to Plaintiff Ptak's attempts to communicate with him and Plaintiff Ptak received no further
commissions on the Franklin Studio Work.

  d.  Geare was induced to act in the manner described in Section 2ciii by New York based
attorney Howard Sadowsky ("Sadowsky"); and, in that regard the Settling Defendant affirms and
acknowledges:

    i.  Geare was introduced to Sadowsky exclusively by Ptak;

    ii.  Although Geare was not certain as to whether Sadowsky was representing Ptak, he
never has possessed any knowledge to the contrary. In other words, with the exception of the
following sentences, he never had any knowledge to the effect that Sadowsky was NOT
representing Ptak. The idea that Sadowsky did not represent Ptak came entirely from statements
made solely by Sadowsky ("Sadowsky's Exclusive Representation Statement") which occurred
subsequent to the emergence of the Conflict. Prior to Sadowsky's Exclusive Representation
Statement which Geare believed due to his confidence in Sadowsky's legal skills and integrity,
Geare believed that there was a possibility that Sadowsky was representing Ptak, and, this belief,
for a time, constrained Geare from contacting Sadowsky even to inquire as to whether Sadowsky
represented Ptak;

    iii.  Until July 2007, Geare communicated with Sadowsky exclusively through Ptak;

    iv.  After the emergence of the Conflict, Sadowsky instructed and dictated the waiver
language that was place on and accompanied the Purported Reimbursement Check (language
which stated that negotiation of the Purported Reimbursement Check would release all claims
against Geare); and,

    v.  Sadowsky never warned or informed Geare that Sadowsky's actions detailed here and
above might constitute legal malpractice or a violation of attorney ethics. Furthermore, Sadowsky
also never warned Geare that the actions Sadowsky instructed Geare to take might constitute a
breach of contract with Ptak.

    vi.  In his relations with Sadowsky, Geare relied on Sadowsky's advice because:

      (1)  He had no other source of legal counsel;

      (2)  he was unsophisticated in business dealings and had no experience by which he
might comprehend that an attorney might give him advice that would result in breaches of an
existing contractual relationship.

      (3)  The engineering work paid for by Plaintiff Ptak and carried out by Kyle Homme was
highly skillful and never needed to be re-recorded.

3.  The Song Splits:

  The Settling Defendant:

  a.  conveys and commits to support and defend Plaintiff's perpetual right to

    i.  plaintiffs' percentage share ("Plaintiffs' Percentage Share") described more fully on
attached Exhibit C to the entire bundle of rights granted to an author of a copyrightable work by
the United States Code Title 17, including but not limited to,

      (1)  any and all gross earnings to be derived from the sale and/ or licensing of the
masters or publishing (Defined in Exhibit B) of the songs or sampled portions of the songs (the
"Songs with Plaintiff Interest") also listed on attached Exhibit C.and/or,

      (2)  any derivative works and/or variations to be created from the Songs with Plaintiff
Interest;

    ii.  where Plaintiff's Percentage Share is described as a numerical range (eg: 15-25%), the
exact determination of Plaintiffs Percentage Share will be determined according to the arbitration
procedures detailed in Exhibit E. The determination of Plaintiff's Percentage Share of the Songs
with Plaintiff's Interest will be the only issue to be subject to arbitration with all other disputes
arising from this agreement to be resolved subject to the provisions of Section 4.

  b.  insures and warrants that no marketing, licensing or sales of the Songs with Plaintiffs
Interest has occurred or shall occur unless Plaintiffs Robert Ptak and Renee Frisch receive explicit
and express credit as Executive Producers;

  c.  warrants to Plaintiffs ("Geare's Anti-Dilution Warranty") that no dilution of his interest in the
Songs with Plaintiffs interest has occurred except among the members of the Band; and
indemnifies Plaintiffs including but not limited to reasonable attorneys fees for any damages to be
incurred deriving from any inaccuracy in Geare's Anti-Dilution Warranty;

  d.  commits to market the Songs with Plaintiffs Interest to the utmost extent of his ability and
resources; in this regard, it shall be the sole right of Plaintiffs to determine whether they wish to be
the lead marketers, co-marketers or to make no marketing efforts of their own whatsoever in
regard to the Songs with Plaintiffs Interest or to prepare or permit the production of derivative
works; furthermore, Ptak and Frisch shall have the right to defend and prosecute against any

works, furthermore, Ptak and Frisch shall have the right to defend and prosecute against any infringement of the Songs with Plaintiffs Interest (provided that theuse of the songs which Ptak and Frisch allege to be an infringement was not authorized by the Settling Defendant). The Settling Defendant shall cooperate with Ptak and Frisch in any manner reasonably necessary to accomplish the prosecution of any aforementioned infringement, and this Agreement shall constitute a limited power of attorney for Ptak and Frisch to prosecute against any aforementioned infringement in the name of the Settling Defendant as well as their own. In any actions launched under this paragraph, the Settling Defendant shall share in the legal expenses in the sense that these expenses shall be deducted from the gross revenue from the Songs with Plaintiffs Interest in the calculation of Net Profit to be determined according to the paragraph immediately below.

e.   grants Plaintiffs Ptak and Frisch the right to audit the Settling Defendant or any of the Settling Defendants grantees or licensees with an auditing agent of Plaintiffs choice in any manner that Plaintiff chooses up to the limits of commercially reasonable criteria;

f.   ratifies his express revocation of the waiver language that prevented Plaintiff Ptak from claiming the funds from the Purported Reimbursement Check.

g.   commits to obey the terms of the prior written agreement with mixer Kyle Homme, attached to this Agreement as Exhibit D.

4.   In any dispute arising from an alleged breach of this Agreement, the party alleging breach will be permitted to utilize all remedies available at law and/or equity including injunctive remedies. In any such conflict, the non-prevailing party agrees to pay the costs legal costs of the prevailing party, including but not limited to reasonably attorneys fees.

5.   INTERPRETATION AND NOTICE.

a.   Interpretation

i.   A provision of this document that requires a party to perform an action will be construed as requiring the party to perform the action or to cause the action to be performed.

ii.   A provision of this document that prohibits a party from performing an action will be construed as prohibiting the party from performing the action or permitting others to perform the action.

iii.   This agreement may be executed in counterparts with a copy, including a digital copy, to be deemed as good as an original.

iv.   Captions and headings used in this document are for reference only. They should be ignored by persons interpreting this document.

v.   This Agreement will be construed in accordance with New York law without regard to New York law as to conflicts of law. New York County will be considered the only proper venue for the resolution of any disputes related to this Agreement.

vi.   This Agreement has been thoroughly negotiated over the course of months with both parties making extensive contributions to the text. As such, it is not a contract of adhesion and shall be deemed to have been drafted by both sides.

To signify their assent to this agreement, each party has set forth his or her signature below.

Darren Geare, Settling Defendant _____

State of California
County of _____ LOS ANGELES

On _4/19/08_ before me _ZI MYOUNG YU, NOTARY PUBLIC_ personally appeared _DARREN P. GEARE_ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person (s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Signature of Notary Public _____

Robert Ptak, Plaintiff _____

ZI MYOUNG YU
COMM. #1508622
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Sept. 15, 2008
BCT9   BCT9

STATE OF NEW YORK

COUNTY OF _____

On the _____ day of _____ in the year _____ before me, the undersigned, personally appeared _____, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

Notary Public

Printed Name: _____
My Commission Expires:

_____

Renee Frisch, Plaintiff _____

STATE OF NEW YORK

COUNTY OF _____

On the _____ day of _____ in the year _____ before me, the
undersigned, personally appeared _____, personally known to me
or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.


_____

Notary Public

Printed Name: _____

My Commission Expires:

_____
Michael Kane, Plaintiff

STATE OF NEW YORK
COUNTY OF _____ _____
On the _____ day of _____ in the year _____ before me, the
undersigned, personally appeared _____, personally known to me
or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is
(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity (ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public
Printed Name: _____

My Commission Expires:

_____

Exhibit A:

Section 1

(Total songs at issue, all songs received development contribution by Plaintiffs):

1. Land of the Brain Damaged
2. Lean on you
3. Crazy
4. Lips
5. Pop Culture's Gonna Eat You
6. Destroy Me
7. Run Away
8. Rain On Your Parade
9. Every Trick In The Book
10. Don't Say It
11. We Are The World
12. Lost Again
13. Stop Looking at Me
14. Swim with the Sharks
15. Can't Stop the Contest
16. Read My Mind
17. Guilty
18. No Way Out
19. All the Rage

Exhibit B

Definition of Masters: Masters are defined as the existing digital recordings created by either
engineer Alessandro Elena and/ or Kyle Homme and presently existing on both a hard drive in the
possession of Plaintiff Ptak and on a disc that was created in the Spring of 2007. This includes
any and all other copies of said recordings existing on other hard drives or any copies of said
recordings made without the knowledge and or consent of the Plaintiff.

Definition of Publishing: The commercial exploitation of songs through the issuance of mechanical
licenses, synchronization licenses, performing rights licenses, print licenses as well as any other
licenses authorizing various uses of the lyrics, score, samples or any visual representations or
simulations of the musicians playing music.

Exhibit C

Plaintiff's Percentage Share of the Songs with Plaintiff's Interest is as follows:

1.    Group 1: From this group, Plaintiff will receive 15% - 25% from (according to the terms of
      Section 3.a and the definitions in Exhibit B) of the Master recordings of these songs:

      a.    Land Of The Brain Damaged
      b.    Swim With The Sharks
      c.    Destroy Me
      d.    Lips
      e.    Crazy
      f.    Stop Looking At Me
      g.    All The Rage
      h.    Lean On You
      i.    No Way Out
      j.    Pop Culture's Gonna Eat You

   2.   Group 2: Cumulative of any rights in the other groups in this Exhibit C, from this group

2.    Group 2. Cumulative of any rights in the other groups in this Exhibit C, from this group,
Plaintiff will receive 10% - 20% from the  (according to the terms of Section 3.a and the definitions
in Exhibit B) the Publishing of these songs:

   a.   Land Of The Brain Damaged
   b.   Lean On You
   c.   Crazy
   d.   Lips
   e.   Pop Culture's Gonna Eat You
   f.   Run Away
   g.   Rain On Your Parade
   h.   Every Trick in the Book
   i.   Don't Say It
   j.   We Are The World
   k.   Lost Again

3.   Group 3: Cumulative of any rights in the other groups in this Exhibit C, from this group,
Plaintiff will receive 5% - 15% from the  (according to the terms of Section 3.a and the definitions
in Exhibit B) the Publishing of these songs:

   a.   Stop Looking At Me
   b.   Swim With The Sharks
   c.   Can't Stop The Contest
   d.   Read My Mind
   e.   Guilty
   f.   No Way Out
   g.   All The Rage
   h.   Destroy Me


Exhibit D
Arbitration

Arbitration:

1.    When Arbitration may be Invoked:

   a.   In this Agreement, arbitration may only be invoked to determine the song splits laid out in
Exhibit C within the ranges specified in Exhibit C.

   b.   The years commencing from the execution of this Agreement and succeeding after each
anniversary of this Agreement will be termed  ("Agreement Years").  Either the Settling Defendant
as one party or Ptak and Frisch acting jointly as the only other party may invoke arbitration ("an
Invocation of Arbitration") once per Agreement Year upon 30 days written notice to the other
Party.

2.    Determining the Arbitrator:

   a.   The Party  invoking arbitration ("Petitioner") may initiate arbitration by giving notice of
arbitration ("Petitioner's Notice") to the other Party ("Respondent").  The Petitioner's Notice will
designate a ("Qualified Person" defined in Section 3 of this Exhibit D as the petitioner's arbitration
nominator ("Petitioner Arbitration Nominator") and will set forth the Petitioner Arbitration
Nominator's name and address.

   b.   Within fifteen days after the Petitioner's Notice is given ("the Fifteen Day Nomination
Period"), Respondent  shall designate a second Qualified Person as the respondent's arbitration
nominator ("Respondent Arbitration Nominator") and give notice to the Petitioner of the
Respondent Arbitration Nominator's name and address.

   c.   If the Respondent fails to give notice designating the Respondent Arbitration Nominator by
the expiration of the Fifteen Day Nomination Period, the Petitioner's Arbitration Nominator shall
select a second Qualified Person to be the Respondent Arbitration Nominator.

   d.   Within fifteen days after their designation, the arbitration nominators shall appoint a third
Qualified Person as the Arbitrator.  If the arbitration nominators do not agree on an Arbitrator
within the Fifteen Day Nomination Period, they shall give notice of their failure to agree to both
Petitioner and Respondent ("Notice of Nominators' Failure").

   e.   The following will apply if the arbitration nominators give Notice of Nominators' Failure to to
Petitioner and Respondent:  Petitioner and Respondent shall confer and attempt to agree on an
Arbitrator.  If Petitioner and Respondent do not agree on the appointment of an Arbitrator within
ten days after they receive the  Notice of Nominators' Failure, either Petitioner or Respondent may
apply to the American Arbitration Association for the appointment of an Arbitrator.

3.   Qualified Persons:

   a.   Only individual persons meeting the following qualifications will be "Qualified Persons."

   i.   A music  industry executive will be a Qualified Person if the executive has at least five
years executive experience in the music industry.

   ii.   A band manager will be a Qualified Person if the manager  has at least five years
experience as a band manager in the music industry and has managed at least one band that has
earned at least one million dollars of gross revenue .

   iii.   A business attorney will be a Qualified Person if the attorney, as a licensed attorney, has


      (1)   at minimum five years of in house experience working for a corporation involved in
the sale of music with at least $5 million in gross revenue or,

      (2)   at minimum eight years of experience practicing primarily in the field of music law.

iv.    After the arbitrator is appointed, he or she shall consider the matter promptly.  The arbitration will be conducted in New York County, New York.

    b.    Substantive Considerations for the Arbitrator:
In determining Plaintiff's Percentage Share to be determined within the restricting ranges laid out in Exhibit C, the following criteria will be given consideration:

    i.    First, the arbitrator will determine what Plaintiffs Ptak and Frisch would deserve, by music industry standards, solely for their role in managing the Setting Defendant and the Band;

    ii.    if, at the time of the arbitrator's determination, Plaintiffs Ptak and Frisch have done no work as manager subsequent to the commencement of the Conflict, the determination of their fair share as manager will be made solely in regard to an industry standard commission for a manager who is no longer acting as manager.

    iii.    if, at the time of the arbitrator's determination, Plaintiff Ptak and Frisch have accomplished additional managerial work subsequent to the commencement of the Conflict, the determination of their fair share as manager will be mae in regard to an industry standard commission for an active manager.

    iv.    After determining what Plaintiffs Ptak and Frisch would deserve for their roles as managers, by industry standards, the arbitrator will determine what additional share Plaintiff's Ptak and Frisch would deserve for their other contributions such as their contributions as executive producers, financial investors and the provision of services by their friends and associates such as Plaintiff Kane's artwork.

    v.    In regard to the arbitrator's assessment of Ptak and Frisch's financial contribution to the Band, the arbitrator shall not be permitted to take the funds from the Purported Reimbursement Check into account in any manner whatsoever.

    vi.    The arbitrator shall add together all of the contributions of Plaintiffs Ptak and Frisch and if the total they would receive by industry standards is greater than the top level of the ranges specified in Exhibit C, they will receive the top level of the applicable range specified in Exhibit C. Otherwise, they will receive the lesser percentage  which the arbitrator believes to be the industry standard, unless that percentage falls under the minimum value within the range, in which case, they will receive the minimum specified by the range specified in Exhibit C.

    c.    Arbitration Procedures:

    i.    Neither discovery nor motion practice will be permitted.  However, each side will have the right to present the opinon of an expert witness, and the arbitrator must take the views of each expert witness into account in regard to industry standards.

    ii.    The Arbitrator must at all times be guided by the following over-arching principles,  the arbitration must be conducted at a minimum cost to the the Parties who will share the expense equally.
Exhibit E:

Email regarding Kyle Homme's split:

Hey Charlie,
I apologize for the delay with the paperwork.  I have been in the process of drafting the agreement with my attorney.  We several docs to generate so it is taking some time.

The agreement we are working up reflects our discussions and will include a 10k bonus if we sell the masters to a major label for over 100k. Of course, that is for selling the masters outright and does not include money the label offers up to market the record or personal advances to the band etc.
I think the quality of the work gives us a really good chance to sell the masters outright for that amount of money, however in the interest of covering as many potential  outcomes as possible the band feels that they should offer sales achievement bonuses. In the event we cannot sell the masters for that amount of money the band would instead like to offer a 10k bonus at the 250k unit sales level. This bonus will take the place of the bonus we have set for the sale of the masters for 100k. Additionally we would like to offer a 10k bonus at 500k and another 10k at 1,000,000. This is a total of 30k in potential bonuses for the excellent work Kyle did.

We discussed adding additional bonuses at lower sales levels but as the band has 5 members I feel like they will need all the money they can get up until they start selling above the 250k mark. Even then I suspect they will still be in a some what limited financial situation.
None of he band are wealthy and have sacrificed more consistent and lucrative careers in order to make the band happen so I want to stay away from cutting too deeply into the initial earnings the band will see.

We are all extremely impressed with Kyle's work and professionalism in the studio. I hope we can work on future recordings together.

Thanks,

Rob


--
This e-mail and any files transmitted with it are for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. Any unauthorized review, use, disclosure, dissemination, forwarding, printing or copying of this email or any action taken in reliance on this email is strictly prohibited and may be unlawful.


    Reply    Forward    Invite Robert Ptak to chat

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ }

On _4/18/08_ before me, _Zi Myoung Yu, Notary public_ ,
_Date_                              Here Insert Name and Title of the Officer

personally appeared _Darrel P. Gean_
Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                          Signature of Notary Public

ZI MYOUNG YU
COMM. #1508622
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Sept. 15, 2008

Place Notary Seal Above

———————————— OPTIONAL ————————————
*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## Description of Attached Document

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

## Capacity(ies) Claimed by Signer(s)

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____
_____
_____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____
_____
_____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org    Item #5907    Reorder: Call Toll-Free 1-800-876-6827

Exhibit G – Additional Language (one page down)



**dan halper <danhalper@gmail.com>**

# final language to add to the agreement
3 messages

**dan halper <danhalper@gmail.com>**             **Sun, May 4, 2008 at 4:47 AM**
To: Robert Ptak <robert.ptak@gmail.com>

Darren simply need to express his agreement that we can add the following language:

"The affirmations of Darren Geare contained in Section 2 of the Settlement Agreement dated April 5, 2008 go to the heart of the agreement, and any statements by Darren Geare to the contrary will render the agreement void."

**Robert Ptak <robert.ptak@gmail.com>**            **Mon, May 5, 2008 at 6:21 PM**
To: Darren Geare <hongkongdarren@gmail.com>
Cc: dan halper <danhalper@gmail.com>

Darren, it looks like we are in a position to turn the settlement over to the court. Dan has been in contact with the court, they know we have reached an agreement. Dan needs you and I to affirm the following before he files the settlement in court. It essentially claims that we both stand by our statements in this contract and it will only be valid as long as we don't contradict these statements.  I am extremely happy to be ending this conflict with you -- a conflict which I never desired in the first place.  All you need to do is send and email back to me stating that you have no problem with us adding the text below to the settlement agreement and Dan can upload the settlement to the courts database and you and I are done with this mess.

I am very eager to help find opportunities to make something god happen with these tracks. If you are interested we should talk and run some ideas passed each other.

Please simply indicate that you have no problem with us adding this statement below:

Statement:

"All affirmations made by the signing parties of this Settlement Agreement dated April 5, 2008 go to the heart of the agreement, and any statements to the contrary made in the future by any of the signing parties will render the agreement void."

--
This e-mail and any files transmitted with it are for the sole use of the intended recipient(s) and may contain confidential and privileged information. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. Any unauthorized review, use, disclosure, dissemination, forwarding,

printing or copying of this email or any action taken in reliance on
this email is strictly prohibited and may be unlawful.


--
This e-mail and any files transmitted with it are for the sole use of
the intended recipient(s) and may contain confidential and privileged
information. If you are not the intended recipient, please contact the
sender by reply email and destroy all copies of the original message.
Any unauthorized review, use, disclosure, dissemination, forwarding,
printing or copying of this email or any action taken in reliance on
this email is strictly prohibited and may be unlawful.

**Robert Ptak <robert.ptak@gmail.com>**          **Wed, May 7, 2008 at 5:56 PM**
To: Darren Geare <hongkongdarren@gmail.com>

Thx bro. I will get back with you as soon as I have some progress on
the itunes stuff.

On Wed, May 7, 2008 at 5:49 PM, Darren Geare <hongkongdarren@gmail.com> wrote:
> Hi Rob,
>
> Yes, I have no problem with you and Dan adding the added text to our
> settlement agreement.
>
> Darren Geare
[Quoted text hidden]

--
[Quoted text hidden]